No. 21-1170

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

MICHAEL RAY INGRAM,

     Plaintiff-Appellant,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
J. FALK, Sterling Correctional Facility Warden,
J. CHAPDELAINE, Associate Warden,
K. MCKAY, SCF Physician's Assistant,

     Defendants-Appellees.

---

On Appeal from the United States District Court
For the District of Colorado

The Honorable Robert E. Blackburn
United States District Judge

D.C. No. 14-cv-01024-REB-KMT

---

## APPELLEES' ANSWER BRIEF

---

PHILIP J. WEISER
Colorado Attorney General

GREGORY R. BUENO
JOSHUA URQUHART
Assistant Attorneys General

*Attorneys for Defendants-Appellees*

Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6644
gregory.bueno@coag.gov
joshua.urquhart@coag.gov

**ORAL ARGUMENT IS NOT REQUESTED**

## TABLE OF CONTENTS

**PAGE**

JURISDICTIONAL STATEMENT...............................................................2

STATEMENT OF RELATED CASES...........................................................2

STATEMENT OF THE ISSUES ..................................................................3

STATEMENT OF THE CASE ......................................................................3

    Facts relevant to issues presented for review ..........................................3

    Relevant procedural history prior to motion for summary judgment.......7

SUMMARY OF ARGUMENT....................................................................11

ARGUMENT ............................................................................................12

I. The district court's order granting Defendants' motion for
   summary judgment should be affirmed because Mr. Ingram did
   not identify genuine disputes of material fact allowing him to
   proceed to trial with his ADA or Rehabilitation Act claims ..............12

   Standard of review and applicable law .................................................12

   A. The district court properly dismissed Mr. Ingram's ADA and
      Rehabilitation Act claims against Dean Williams as a matter
      of law .............................................................................................16

   B. The district court properly dismissed all of Plaintiff's claims
      against Defendants Werholz, Raemisch, Falk, and
      Chapdelaine ...................................................................................20

   C. This Court should uphold the district court's dismissal of Mr.
      Ingram's ADA and Rehabilitation Act claims because he

i

# TABLE OF CONTENTS

**PAGE**

    failed to produce any evidence that any Defendant acted with discriminatory intent ...................................................................... 22

II. The district court's orders denying Mr. Ingram's motions for appointment of counsel, for leave to file a second amended complaint, and for extensions of time to respond to Defendants' motion for summary judgment should be affirmed because the district court did not abuse its discretion when issuing any of these orders .......................................................................... 26

    A. The district court properly denied Mr. Ingram's motion for appointment of pro bono counsel ...................................................... 26

    B. The district court did not err in denying Mr. Ingram's motion for leave to file a Second Amended Complaint ................................ 30

    C. The district court did not abuse its discretion in denying Mr. Ingram's two motions for extension of time to file a response to Defendants' motion for summary judgment ................................ 32

    D. The district court did not err in declining to authorize a report pursuant to Martinez v. Aaron ............................................. 35

    E. The district court did not err in dismissing all of Mr. Ingram's claims against non-answering Defendant Tom Clements .............. 36

CONCLUSION .................................................................................... 38

STATEMENT REGARDING ORAL ARGUMENT ....................................... 38

CERTIFICATE OF COMPLIANCE ............................................................ 39

CERTIFICATE OF SERVICE .................................................................... 40

ii

# TABLE OF CONTENTS

**PAGE**

ATTACHMENTS (1 – 7) PURSUANT TO 10TH CIR.R.28.2(A) AND
10TH CIR.R.30.1(F) ................................................................. 41

   (1) District Court Order Denying Plaintiff's "Motion for
       Appointment of Counsel." dated 05/10/2019 [ECF No. 136] .............. 1

   (2) District Court Order Denying Plaintiff's "Motion to File a
       Second Amended Complaint." dated 10/03/2019 [ECF No. 173] ....... 7

   (3) District Court Order Recommendation of United States
       Magistrate Judge dated 10/07/2019 [ECF No. 176] ........................ 11

   (4) District Court Order Denying Plaintiff's "Motion for
       Appointment of Counsel." dated 04/14/2020 [ECF No. 204] ........... 17

   (5) District Court Minute Order Denying Plaintiff's Motion for
       Extension of Time [#215] and Plaintiff's Motion for Extension
       of Time to Respond to Defendant McKay's Motion for
       Summary Judgment [#217]Recommendation of United States
       Magistrate Judge and Order dated 03/29/2021 [ECF No. 221] ....... 22

   (6) District Court Order Granting Motions for Summary
       Judgment dated 03/30/2021 [ECF No. 222] ..................................... 24

   (7) District Court Final Judgment dated 03/30/2021 [ECF No.
       223] ................................................................................................ 38

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664 (10th Cir. 1998) ................... 14

*Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) ....................................... 13

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................ 13

*Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222 (10th Cir. 2009) ........................................................................................ 22

*Barnes v. Gorman*, 536 U.S. 181 (2002) ...................................................... 25

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111 (10th Cir. 2001) . 13, 14

*Bd. of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001) ........................................................................................ 18

*Blankenship v. Meachum*, 840 F.2d 741 (10th Cir. 1988) ........................... 27

*Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003) ..................... 18, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................ 14

*Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850 (10th Cir. 2003)............... 19

*Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) ....................... 30

*Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717 (10th Cir. 2011) ........................................................................................ 17

*Concrete Works of Colo., Inc.,* v. City & Denver, 36 F.3d 1513 (10th Cir. 1994) ........................................................................................ 14

iv

# TABLE OF AUTHORITIES

**PAGE**

*Ellis v. Univ. of Kansas Medical Cent.*, 163 F.3d 1186 (10th Cir. 1998) .................................................................................. 33

*Estelle v. Gamble*, 429 U.S. 97 (1976) ........................................... 15

*Faustin v. City & Cty. of Denver*, 423 F.3d 1192 (10th Cir. 2005) ............. 13

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................. 30

*Frank v. U.S. West, Inc.,* 3 F.3d 1357 (10th Cir. 1993) .............................. 30

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................ 25

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................ 18

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) ............................... 35

*Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449 (10th Cir. 1982) ........ 30

*Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111 (10th Cir. 2004) .... 27, 28

*Hollonbeck v. U.S. Olympic Comm.*, 513 F. 3d 1191 (10th Cir. 2008).. 17, 18

*Ingram v. Clements*, 705 Fed. Appx. 721 (10th Cir. 2017)..................... 2, 10

*Ketchum v. Cruz*, 961 F.2d 916 (10th Cir. 1992)................................ 35

*Koehler v. Kirby*, 16 F.3d 416 (10th Cir. 1994)................................. 35

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ............................ 33

*Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716 (10th Cir. 1993) .................. 15

*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) ............................ 3, 35

*McCarthy v. Weinberg*, 753 F.2d 836 (10th Cir. 1985)........................ 28

# TABLE OF AUTHORITIES

**PAGE**

*Montez v. Romer*, 32 F.Supp.2d 1235 (D. Colo. 1999) ................................. 20

*Ogden v. San Juan Cty.*, 32 F.3d 452 (10th Cir. 1994) ............................... 15

*Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998) ............. 20

*Rachel v. Troutt*, 820 F.3d 390 (10th Cir. 2016) .......................................... 33

*Robertson v. Las Animas Cty Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007) ...................................................................................................... 17, 18

*Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995) ................................. 27

*Shabazz v. Askins*, 14 F.3d 533 (10th Cir. 1994) ........................................ 27

*Shero v. City of Grove*, 510 F.3d 1196 (10th Cir. 2007) ............................... 12

*Tyler v. City of Manhattan*, 118 F.3d 1400 (10th Cir. 1997) ....................... 23

*U.S. v. Georgia*, 546 U.S. 151 (2006) .................................................... 23, 25

*United States v. Jarvis*, 499 F.3d 1196 (10th Cir. 2007) ............................. 15

*Watson ex rel. Watson v. Beckel*, 242 F.3d 1237 (10th Cir. 2001) .............. 31

*Wright v. Abbott Labs., Inc.,* 259 F.3d 1226 (10th Cir. 2001) ..................... 13

*York v. City of Las Cruces*, 523 F.3d 1205 (10th Cir. 2008) ....................... 15

**STATUTES**

28 U.S.C. § 1331............................................................................................. 2

28 U.S.C. § 1343............................................................................................. 2

29 U.S.C. § 701, *et seq.*................................................................................. 8

vi

# TABLE OF AUTHORITIES

**PAGE**

42 U.S.C. § 12132 .................................................................. 20

**RULES**

10th Cir. R. 28.2(C)(3) ............................................................ 2

10th Cir. R. 34.1 ................................................................. 38

D.C.COLO.LAttyR 15(f)(1)(B) .................................................... 28

D.C.COLO.LCivR 6.1(a) .......................................................... 33

Fed. R. App. P. 32(a)(7)(C) ..................................................... 39

Fed. R. App. P. 34(a)(1) ........................................................ 38

Fed. R. Civ. P. 6(b)(1) ......................................................... 33

Fed. R. Civ. P. 15(a) ........................................................... 30

Fed. R. Civ. P. 25(a)(1) ........................................................ 37

Fed. R. Civ. P. 25(d) ....................................................... 17, 37

Fed. R. Civ. P. 56(a) ........................................................... 13

No. 21-1170

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

MICHAEL RAY INGRAM,

     Plaintiff-Appellant,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
J. FALK, Sterling Correctional
Facility Warden,
J. CHAPDELAINE, Associate
Warden,
K. MCKAY, SCF Physician's
Assistant,

     Defendants-Appellees.

---

       Defendants-Appellees Dean Williams, Roger Werholz, Rick

Raemisch, James Falk and John Chapdelaine ("CDOC Defendants"),

through their counsel, the Colorado Attorney General, respectfully

submit their Answer Brief.

1

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the matter below pursuant to 28 U.S.C. §§ 1331 and 1343. The district court entered a summary judgment order and a final judgment on March 30, 2021, *Summary Judgment Order*, ROA, Vol. III, at 311-26[1], and Plaintiff-Appellant Michael Ingram filed a timely notice of appeal on May 3, 2021. *Notice of Appeal*, ROA, Vol. III, at 326-29. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF RELATED CASES

Pursuant to 10th Cir. R. 28.2(C)(3), undersigned counsel is aware of one related case: *Ingram v. Clements*, 705 Fed. Appx. 721 (10th Cir. 2017). As will be discussed below, this case was the result of Mr. Ingram's appeal of the district court's September 2015 order granting the CDOC Defendants' and Defendant McKay's motions to dismiss. This Court partially reversed that order and reinstated the case.

---

[1] Pursuant to the Local Rules of the Tenth Circuit, references to the three-volume record in this appeal will be written as follows: "*Document,* ROA, Vol. __, at ___".

## STATEMENT OF THE ISSUES

1.      Did the district court correctly grant CDOC Defendants' motion for summary judgment where Mr. Ingram failed to point to evidence sufficient to proceed to trial on his cause of action under Title II of the Americans With Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act")?

2.      Did the district court correctly deny Mr. Ingram's motions for appointment of counsel, for leave to file a second amended complaint, for extension of time to conduct discovery and respond to CDOC Defendants' motion for summary judgment, for the court to authorize a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978) and for inclusion of former CDOC Executive Director Tom Clements as a defendant, where the district court did not abuse its discretion?

## STATEMENT OF THE CASE

**Facts relevant to issues presented for review.**

Mr. Ingram was incarcerated at Sterling Correctional Facility (SCF). Defendant Raemisch was the CDOC's Executive Director from

July 22, 2013 until his retirement on January 8, 2019. *Raemisch*

*Employee Info.*, Aplee. Supp. App. Vol. 1 at 78.[2] Defendant Werholz was

CDOC's Interim Executive Director from April 22, 2013 until his

retirement on July 31, 2013. *Werholz Employee Info.,* Aplee. Supp. App.

Vol. 1 at 79. Defendant Falk was Warden and Deputy Director of

Prisons from December 15, 1995 until his retirement on January 31,

2019. *Falk Employee Info.*, Aplee. Supp. App. Vol. 1 at 80. Defendant

Chapdelaine was a Warden from July 1, 2001 until his retirement on

October 31, 2016. *Chapdelaine Employee Info.*, Aplee. Supp. App. Vol. 1

at 81. Defendant Williams is the CDOC's current Executive Director.

According to Mr. Ingram's CDOC medical records, he saw Dr.

Goldsmith for a medical visit on December 17, 2008. *Ambulatory Health*

*Record,* Aplee. Supp. App. Vol. 1 at 82. Mr. Ingram told Dr. Goldsmith

---

[2] The Court appears to have inadvertently omitted from the Record on Appeal a number of documents filed in the district court which are relevant to the issues raised in this appeal. Counsel for CDOC Defendants has contemporaneously filed a supplemental appendix which contains the missing documents. Counsel will refer to the Supplemental Appendix using the following citation convention: Aplee. Supp. App. Vol. 1 at ___.

he had been experiencing a burning sensation in his feet which made it difficult for him to stand for a long period of time. *Ambulatory Health Record,* Aplee. Supp. App. Vol. 1 at 82. Dr. Goldsmith issued Ingram a medical work restriction which prohibited Mr. Ingram from standing for more than 30 minutes. *Ambulatory Health Record,* Aplee. Supp. App. Vol. 1 at 82. Dr. Goldsmith also ordered x-rays of Mr. Ingram's lower back and hips. *Ambulatory Health Record,* Aplee. Supp. App. Vol. 1 at 82. Mr. Ingram identified a choking cough, neck pain, back spasms, foot pain, knee pain, lower back pain, left hip pain, and a sense of constriction in his chest as his physical ailments. *Ambulatory Health Record,* Aplee. Supp. App. Vol. 1 at 82.

When Mr. Ingram was asked during his deposition to describe the actions defendant Raemisch took which violated Title II of the ADA and the Rehabilitation Act (or conduct which he contends is otherwise unlawful), he testified only that he holds Mr. Raemisch "responsible for continuing the way the system functions." *Ingram Dep. Tr.*, at 49:1-21, Aplee. Supp. App. Vol. 1 at 88. When Mr. Ingram was asked to describe what actions defendant Werholz took which he believes violated the

ADA and/or the Rehabilitation Act, Mr. Ingram testified that he named

Mr. Werholz as a defendant "because he became the executive director

and, as a result, he would then be responsible as far as the injunctive…

relief." *Ingram Dep. Tr.* at 48:1-13; Aplee. Supp. App. Vol. 1 at 87.

Ingram also testified that he named Werholz as a defendant only

because he felt he was responsible for the "system" working improperly.

*Ingram Dep. Tr.*, at 49:9-16; Aplee. Supp. App. Vol. 1 at 88.

   Mr. Ingram also testified about the warden at SCF. While he did

not identify the warden by name, it appears he was referring to

Defendant Falk. Mr. Ingram testified that he wrote a letter to Mr. Falk

informing him about how it was improper to assign him to the kitchen.

*Ingram Dep. Tr.* at 27:19-28:2; Aplee. Supp. App. Vol. 1 at 85. Mr.

Ingram's deposition does not contain any claims about Mr. Falk's

purported wrongdoing pertaining to Mr. Ingram's claims about waiting

in line for medication.

   When Mr. Ingram was asked to describe what acts or omissions

defendant Chapdelaine took that could be construed as violations the

ADA and the Rehabilitation Act, he testified that Mr. Chapdelaine, who

was the Associate Warden, had informed him that he (Mr. Ingram) had filed 21 frivolous grievances. *Ingram Dep. Tr.*, at 49:22-25; 51:3-17; Aplee. Supp. App. Vol. 1 at 88, 90. But Mr. Ingram could not ascribe any purported misconduct to Mr. Chapdelaine. More broadly, when Mr. Ingram was asked if he sent letters or grievances to any Wardens or Executive Directors specifically regarding his complaints about standing in med line, he testified only that he "thinks" he "probably" did so. *Ingram Dep. Tr.*, at 75:1-8; Aplee. Supp. App. Vol. 1 at 96.

On March 30, 2021, the district court issued an order granting the CDOC Defendants' motion for summary judgment in full.[3] *Summary Judgment Order*, ROA, Vol. III, at 311-326; *Final Judgment,* ROA, Vol. II, at 325-326. This appeal followed.

**Relevant procedural history prior to motion for summary judgment.**

Mr. Ingram filed his initial Complaint on April 9, 2014. *Complaint,* ROA, Vol. I, at 12-55. This Complaint raised claims under

---

[3] The district court also fully granted co-defendant McKay's motion for summary judgment.

42 U.S.C. § 1983, Title II of the ADA, 42 U.S.C. § 12132, *et seq.,* and the

Rehabilitation Act, 29 U.S.C. § 701, *et seq*., against healthcare providers

and other personnel employed or contracted by the CDOC. *Complaint,*

ROA, Vol. I, at 12-18. Mr. Ingram alleged therein that these defendants

forced him to work in the kitchen at Sterling Correctional Facility

(SCF), which, due to his numerous physical ailments, caused him pain

and suffering and exacerbated his medical conditions. *Complaint,* ROA,

Vol. I, at 18-41.

On October 10, 2014, Ingram filed his First Amended Complaint

alleging the Defendants violated his rights under the Eighth

Amendment, and he once again raised causes of action under the ADA

and Rehabilitation Act. *First Amended Complaint,* ROA, Vol. I, at 137-

57. In addition to alleging that he was required to work in the SCF

kitchen, he also claimed that the CDOC Defendants required him to

stand in a long line (known within CDOC prisons as the "med line"),

including during cold weather, to receive his medication, despite being

incapable of standing for more than 30 minutes. *First Amended*

*Complaint,* ROA, Vol. I, at 137-57.

8

On October 29, 2014, the district court issued an Order dismissing the Amended Complaint in part and drawing the case pursuant to 28 U.S.C. § 1915. *Order to Dismiss and Draw,* ROA, Vol. I, at 161-170. The district court allowed the Eighth Amendment claim to proceed as to all Defendants, including co-Defendant-Appellee McKay, and dismissed the remaining claims as frivolous. *Order to Dismiss in Part,* ROA, Vol. I, at 169-170. Defendants Raemisch, Werholz, Falk, and Chapdelaine filed an unopposed motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), on January 26, 2015. *Motion to Dismiss First Amended Complaint*, ROA, Vol. I, at 217-55. The district court granted this motion on September 23, 2015 and dismissed the case. *Recommendation to Grant Motions to Dismiss*, ROA, Vol. I, at 325-38; *Order Adopting Recommendation¸* ROA, Vol. I, at 359-364; *Final Judgment*, Vol. I, at 365-366. Ingram appealed of the district court's order of dismissal to this Court. *Notice of Appeal & Attachments,* ROA, Vol. I, at 397-402.

This Court affirmed in part and reversed in part the district court's decision and partially reinstated the First Amended Complaint

against the CDOC Defendants. *Ingram v. Clements*, 705 Fed. Appx. 721 (10th Cir.2017). Specifically, this Court reinstated the ADA and Rehabilitation Act claims against the CDOC Defendants as well as the Eighth Amendment claim against Defendant McKay (who is represented by separate counsel) but affirmed the district court's dismissal of all other claims. *Id.* at 725-727. The subject matter that the Tenth Circuit determined gives rise to the ADA and Rehabilitation Act claims is limited to Ingram's allegations about his access to medication. *Id.* at 725-26. The Tenth Circuit made clear that the Eighth Amendment claim, which pertains to his assignment to work in the prison kitchen, was raised only against Defendant McKay. *Id.* at 726 ("[T]he sole Eighth Amendment claim we may consider after application of the 'firm-waiver rule' is Ingram's deliberate indifference claim against McKay.").

On October 3, 2019, the district court denied Mr. Ingram's motion for leave to file a Second Amended Complaint. *Order Denying Motion for Leave*, ROA, Vol. III, at 162-65.

## SUMMARY OF ARGUMENT

The district court's order granting the CDOC Defendants' motion for summary judgment should be affirmed. Mr. Ingram raised causes of action under Title II of the ADA and the Rehabilitation Act. He failed to establish a genuine dispute of material fact sufficient to proceed to trial as to either claim because he could not point to evidence in the record that the CDOC Defendants denied him a service or program because of his disabilities. Mr. Ingram's attempt to bring individual capacity claims for monetary damages against the Defendants was without merit because such claims are not permitted under the ADA or Rehabilitation Act, and the district court correctly dismissed those claims. Similarly, the district court properly dismissed Mr. Ingram's official capacity claims against CDOC Defendants Werholz, Raemisch, Falk and Chapdelaine. Only prospective injunctive relief is available in an official capacity claim, and because these Defendants no longer work for the CDOC, it is impossible for them to provide such relief.

Mr. Ingram also argues on appeal that some of the decisions the district court made prior to granting the CDOC Defendants' motion for

summary judgment should be reversed. The decisions include (1) the district court orders denying Mr. Ingram's request for appointment of *pro bono* counsel; (2) the order denying Mr. Ingram's motion for leave to file a second amended complaint; (3) the orders denying Mr. Ingram's motions for extension of time to conduct discovery and respond to Defendants' motion for summary judgment; (4) the orders denying Mr. Ingram's request for a report pursuant to *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978); and (5) for inclusion of former Executive Director Tom Clements as a defendant. None of these orders should be overturned because the district court did not abuse its discretion in issuing them.

## ARGUMENT

**I.   The district court's order granting Defendants' motion for summary judgment should be affirmed because Mr. Ingram did not identify genuine disputes of material fact allowing him to proceed to trial with his ADA or Rehabilitation Act claims.**

**Standard of review and applicable law.**

An order granting a motion for summary judgment is reviewed *de novo. Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir.2007).

12

Summary judgment is warranted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664,

13

671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc., v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

Because at summary judgment the Court is beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: "'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of

14

the facts[.]'" *York v. City of Las Cruces,* 523 F.3d 1205, 1210 (10th Cir.

2008).[4]

---

[4] Mr. Ingram did not file a response to the motion for summary judgment, despite having been afforded more than sufficient time to do so. This Court will consider arguments not raised below only in the most unusual circumstances. Indeed, this Court has consistently held that "a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." *United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) (citation omitted) (quoting *Lyons v. Jefferson Bank & Tr.,* 994 F.2d 716, 721 (10th Cir. 1993)). Here, Mr. Ingram presented no theories below. Although the Court may construe Mr. Ingram's papers liberally due to his status as an incarcerated *pro se* litigant, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), a court cannot make arguments for him. *Ogden v. San Juan Cty.,* 32 F.3d 452, 455 (10th Cir. 1994).

Mr. Ingram's Opening Brief provides no adequate explanation to excuse his failure to respond to Defendants' motion for summary judgment, nor does it identify any genuine disputes of material fact or legal arguments as to why the district court's decision should be overturned. Rather, Mr. Ingram repeats the claim, raised throughout the pendency of the case in district court, that he was unable to effectively litigate this case for medical reasons and because he was not appointed counsel. *Opening Brief* at 11-20. While Mr. Ingram raised these arguments below on numerous occasions, they are not substantive arguments in response to the motion for summary judgment and are insufficient to excuse his failure to oppose the motion. Thus, to the extent this Court construes Mr. Ingram's Opening Brief as raising any substantive arguments challenging the district court's grant of summary judgment, they should not be considered because he did not raise them below. Should this Court deem Mr. Ingram's arguments as

15

## A. The district court properly dismissed Mr. Ingram's ADA and Rehabilitation Act claims against Dean Williams as a matter of law.

To overcome Defendants' motion for summary judgment and proceed to trial on his ADA and Rehabilitation Act claims, Mr. Ingram was required to identify genuine disputes of material fact as they pertain to the elements of these claims. Mr. Ingram did not meet this burden as to his claims against Mr. Williams, the current Executive Director of the CDOC. For this reason, the district court properly dismissed these claims.

A plaintiff seeking accommodations under Title II of the ADA must show that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th

---

not being responsive to the motion for summary judgment at all, then they should be disregarded for that reason as well.

Cir. 2007). To demonstrate he is entitled to protection under Section 504 of the Rehabilitation Act, a plaintiff must show that "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Hollonbeck v. U.S. Olympic Comm.*, 513 F. 3d 1191, 1194 (10th Cir. 2008). Because the required showings under the ADA and the Rehabilitation Act are substantially similar, the same analysis can be generally applied to both. *Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011).

As the current Executive Director of the CDOC, Mr. Williams is the successor in interest to former Executive Directors Clements, Raemisch, and Werholz. According to Federal Rule of Civil Procedure 25, "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). This means that Executive Director Williams is the only named CDOC Defendant against whom official

capacity Title II ADA/Rehabilitation Act claims could be properly pleaded as a matter of law. *See Bruggeman v. Blagojevich*, 324 F.3d 906, 912-13 (7th Cir. 2003) (citing *Bd. of Trustees of University of Alabama v. Garrett,* 531 U.S. 356 (2001)). The official capacity claim against Mr. Williams is also in effect a claim against the CDOC. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) (stating that claims asserted against government officials in their official capacities are construed against the governmental entity).

However, Mr. Ingram did not produce the evidence needed to proceed with his claims against Executive Director Williams. Both Title II of the ADA and the Rehabilitation Act require a plaintiff to prove that he was excluded from or denied the benefits of a public entity's services, programs, or activities *because* of his or her disability and/or that the program discriminated against him. *Robertson v. Las Animas Cty Sheriff's Dep't*, 500 F.3d at 1193; *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d at 1194. Mr. Ingram has not shown that Executive Director Williams violated either the ADA or the Rehabilitation Act. Indeed, the record on summary judgment below reveals that Mr.

18

Ingram failed to show that he was denied access to a service or program and that such denial was the result of his alleged disabilities. To be sure, Mr. Ingram claimed that he is required to stand in wait at the Sterling Correctional Facility med line for his medications for 20 to 35 minutes at a time and asserted that doing so causes him physical discomfort. But Mr. Ingram has not explained how under these circumstances, the CDOC Defendants have denied him a service or program consistent with a Title II or Rehabilitation Act claim.[5] Mr. Ingram failed to create genuine disputes of fact that the CDOC is discriminating against him, as he is being afforded the required meaningful access to a medical service. *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003). This means the district court properly denied Mr. Ingram's claims under Title II of the ADA and the Rehabilitation Act, and this Court should affirm that finding.

---

[5] Mr. Ingram had a work restriction stating that he could not work standing up for more than 30 minutes which was instituted and current as of 2008, and he alleges he was sometimes required to stand in med line for more than 30 minutes. However, this work restriction alone is insufficient to show that he was denied a program or service as a result of a disability.

19

**B. The district court properly dismissed all of Plaintiff's claims against Defendants Werholz, Raemisch, Falk, and Chapdelaine.**

The district court properly granted summary judgment in favor of Defendant-Appellants Werholz, Raemisch, Falk, and Chapdelaine to the extent Mr. Ingram intended to raise individual capacity claims against them. *Summary Judgment Order*, ROA, Vol. III, p. 321. To prevail on a Title II ADA or Rehabilitation Act claim, a plaintiff must allege that a public *entity* discriminated against him. 42 U.S.C. § 12132; *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 208 (1998) (the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability'"). "[I]ndividual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the Disability Act." *Montez v. Romer*, 32 F.Supp.2d 1235, 1241 (D. Colo. 1999).

Neither Title II of the ADA or the Rehabilitation Act allow a plaintiff to raise claims against individual state defendants. To the extent Mr. Ingram raised individual capacity claims against the above-referenced Defendants under the ADA and Rehabilitation Act, such

claims were properly dismissed as a matter of law, and this Court should uphold this ruling.

The district court also correctly found that Mr. Ingram could not maintain a cause of action against Defendants Werholz, Raemisch, Falk, and Chapdelaine in their *official* capacities. *Summary Judgment Order*, ROA, Vol. III, p. 321. A litigant may file suit under the ADA and Rehabilitation Act against a state official in his official capacity for injunctive relief. *Bruggeman*, 324 F.3d at 912-13. However, Defendants Raemisch, Falk, Werholz and Chapdelaine cannot held liable in their official capacities because they are no longer employed by the CDOC. *Employee Records,* Aplee. Supp. App. Vol. 1 at 78-81; *Summary Judgment Order*, ROA, Vol. III, at 321. Since these Defendants are not in any way employed or otherwise affiliated with the CDOC, they necessarily cannot implement any changes to policy or practices at any CDOC facility or take any action that would affect Mr. Ingram's med line wait times. It follows, then, that the district court could not have ordered these Defendants to provide any injunctive relief to Mr. Ingram, and the district court's order dismissing the official capacity

21

claims against them was proper. Accordingly, this Court should affirm

the district court's order dismissing Mr. Ingram's official capacity

claims against Defendants Werholz, Reamisch, Falk and Chapdelaine

as a matter of law.

### C. This Court should uphold the district court's dismissal of Mr. Ingram's ADA and Rehabilitation Act claims because he failed to produce any evidence that any Defendant acted with discriminatory intent.

To recover compensatory damages under the Rehabilitation Act, a

plaintiff must establish that the agency's discrimination was

intentional. *Barber ex rel. Barber v. Colo. Dep't of Revenue,* 562 F.3d

1222, 1228 (10th Cir.2009). This does not require "a showing of personal

ill will or animosity toward the disabled person; rather, 'intentional

discrimination can be inferred from a defendant's deliberate

indifference to the strong likelihood that pursuit of its questioned

policies will likely result in a violation of federally protected rights.'" *Id.*

Similarly, Title II of the ADA could be used as a vehicle to recover

monetary damages provided the plaintiff can show the defendant

engaged in conduct that violates the Fourteenth Amendment. *U.S. v.*

*Georgia*, 546 U.S. 151, 158-59 (2006). Insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. *Id.* A prior decision of this Court appears to more expressly require a showing of intentional discrimination before a plaintiff may recover compensatory damages for mental or emotional injury in a ADA claim. *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403-04 (10th Cir. 1997). Under either standard (violation of the Fourteenth Amendment or intentional discrimination), Mr. Ingram cannot make the showing necessary to recover monetary damages.

In the proceedings below, Mr. Ingram did not show that the CDOC Defendants intentionally discriminated against him. When asked to describe each of these Defendants' conduct, Ingram testified that he *may* have made them aware about his pain and discomfort while standing waiting for medication by writing letters about these issues to them, though he is not sure. *Ingram Dep. Tr.*, at 75:1-8; Aplee. Supp. App. Vol. 1 at 96. Overall, the conduct Ingram ascribes to the Defendants does not suggest these Defendants acted with a

discriminatory or equivalent ill-intentioned purpose; indeed, Ingram

could not even say that these Defendants were *actually* aware of his

complaints.

For instance, Ingram testified that he named Defendants

Raemisch and Werholz simply because they were, at different points in

time, in charge of the CDOC. *Ingram Dep. Tr.* at 48:1-13; Aplee. Supp.

App. Vol. 1 at 87; *Ingram Dep. Tr.*, at 49:1-21, Supp. App. Vol. 1 at 88.

Ingram testified he named Falk as a Defendant because of allegations

that pertain only to the Eighth Amendment claim, which does not apply

to the CDOC Defendants. *Ingram Dep. Tr.* at 27:19-28:2; Supp. App.

Vol. 1 at 85. He brought suit against Defendant Chapdelaine solely

because Chapdelaine sent him a letter indicating that he (Mr. Ingram)

had filed 21 frivolous grievances. *Ingram Dep. Tr.*, at 75:1-8; Aplee.

Supp. App. Vol. 1 at 96; *Ingram Dep. Tr.*, at 49:22-25; 51:3-17; Aplee.

Supp. App. Vol. 1 at 88, 90. In the case of Defendants Raemisch and

Werholz, Ingram states that he sued them simply because they served

as Executive Directors of the CDOC, and therefore they were

responsible for any difficulties he was experiencing. Ultimately,

24

Ingram's testimony is insufficient to show that the aforementioned

Defendants intentionally discriminated against him.[6]

Finally, to the extent Ingram is seeking punitive damages from

the above Defendants, such claims should be dismissed because both

Title II of the ADA and the Rehabilitation Act do not provide for

recovery of such damages. *Barnes v. Gorman*, 536 U.S. 181, 189-90

(2002) (finding that Title II of the ADA and the Rehabilitation Act do

not permit punitive damages awards).

For these reasons, Mr. Ingram's ADA and Rehabilitation Act

claims fail.

---

[6] Ingram also cannot rely on *U.S. v. Georgia* to recover monetary damages from the CDOC Defendants under the ADA. The alleged conduct underlying the claims against them would not establish a violation of the Fourteenth Amendment as distinguished from a violation of another Constitutional amendment. The Supreme Court held that '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Graham v. Connor*, 490 U.S. 386 (1989).

II.   **The district court's orders denying Mr. Ingram's motions for appointment of counsel, for leave to file a second amended complaint, and for extensions of time to respond to Defendants' motion for summary judgment should be affirmed because the district court did not abuse its discretion when issuing any of these orders.**

A.   **The district court properly denied Mr. Ingram's motion for appointment of *pro bono* counsel.**

Mr. Ingram argues on appeal that the district court erred in denying his motion for appointment of pro bono counsel. *Opening Brief*, at 5-7. Mr. Ingram filed the motion on March 28, 2019, which included two supplemental filings. *Motion for Appointment of Counsel*, ROA, Vol. III, at 56-91. The district court denied this motion on May 10, 2019. *Order Denying Motion,* ROA, Vol. III, at 106-11. Mr. Ingram filed another motion on April 6, 2020, which the district court denied on April 14, 2020 for substantially the same reasons as it did the first motion. *Second Motion for Appt. of Counsel,* Aplee. Supp. App. Vol. 1 at 48-54. Mr. Ingram argues that the district court erred because it failed to comprehend the difficulties he would encounter in litigating this case due to his disabilities, and that as a result he had to abandon his equal

26

protection claim. *Opening Brief,* at 6, 10. This is not sufficient grounds for reversing the district court's denial of his motions for appointment of counsel.

The appointment of counsel in a civil case is left to the sound discretion of the district court. *Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir.1994). Decisions regarding whether to appoint a litigant counsel in a civil matter are reviewed for abuse of discretion. *Blankenship v. Meachum*, 840 F.2d 741, 743 (10th Cir. 1988). The district court must "give careful consideration to all the circumstances with particular emphasis upon certain factors that are highly relevant to a request for counsel. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). These factors include: the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims. *Id.* (internal quotation marks omitted). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted) (quoting

*McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir.1985)). "Only in

those extreme cases where the lack of counsel results in fundamental

unfairness will the district court's decision be overturned." *Id.* (quoting

*McCarthy*, 753 F.2d at 839).

The district court applied the factors in the District of Colorado's

Local Rules for reviewing a motion for appointment of counsel in a civil

action: (1) the nature and complexity of the action; (2) the potential

merit of the pro se party's claims; (3) the demonstrated inability of the

unrepresented party to retain an attorney by other means; and (4) the

degree to which the interests of justice will be served by appointment of

counsel, including the benefit the court may derive from the assistance

of the appointed counsel. D.C.COLO.LAttyR 15(f)(1)(B). *Order Denying*

*Motion for Appt. of Counsel*, ROA, Vol. III, at 107; *Order Denying*

*Second Motion for Appt. of Counsel*, Aplee. Supp. App. Vol. 1 at 56-60.

In so doing, the district court correctly found that this action was not

sufficiently novel or complex to require the appointment of counsel. Mr.

Ingram successfully appealed a previously filed motion to dismiss,

which resulted in remand and reinstatement of the case. His purported

28

difficulties in litigating this case ring hollow when confronted with the reality that he not only successfully appealed the initial dismissal of this action, but also filed numerous lengthy papers with the district court and effectively participated in his deposition. Moreover, the papers filed in support of Mr. Ingram's motion do not indicate that he made any efforts to obtain counsel on his own accord. *Motion for Appt. of Counsel*, ROA, Vol. III, at 56-59; *Second Motion for Appt. of Counsel*, Aplee. Supp. App. Vol. 1 at 48-54. There is no argument raised below or on appeal suggesting that appointing Mr. Ingram counsel would have served the interests of justice or that it would have worked to the benefit of the district court.

Because Mr. Ingram's explanation for why he needed counsel was threadbare, and because his participation in the case contradicted his representations to the court about not being able to litigate the case on his own, the court did not abuse its significant discretion to deny the motion. This Court should therefore affirm the order.

## B.    The district court did not err in denying Mr. Ingram's motion for leave to file a Second Amended Complaint.

This Court reviews for abuse of discretion a district court's denial of a plaintiff's motion to file an amended complaint." *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010). A court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The purpose of this Rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). "[T]he grant or denial of an opportunity to amend is within the discretion" of the Court, but an "outright refusal to grant the leave without any justifying reason" is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Proposed amendments are futile when the amended complaint

30

"would be subject to dismissal for any reason." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

The district court properly denied the motion on the grounds that the amendments proposed therein were futile. *Order Denying Motion for Leave*, Vol. III, at 162-165. The proposed Second Amended Complaint ("SAC") did not add any new causes of action, requests for relief, or parties, nor did it add anything of substance to Mr. Ingram's remaining claims against the Defendants. The proposed SAC merely provided additional details about Mr. Ingram's medical history. *Motion for Leave to File SAC*, Aplee. Supp. App. Vol. 1 at 25-47. Because the proposed Second Amended Complaint did not set forth any new causes of action or make any substantive changes to Mr. Ingram's remaining claims, it was properly dismissed as futile.

On appeal, Mr. Ingram does not present any substantive argument for why the district court was incorrect in denying his motion for leave to amend. *Opening Brief,* at 9-10. He states in a purely conclusory manner that the proposed Second Amended Complaint would have better served his case because it would have helped him

31

defeat the CDOC Defendants' motion for summary judgment. *Opening Brief*, at 9-10. This is not a sufficient explanation as to why the district court abused its discretion or why the proposed pleading was not futile.

The district court therefore did not abuse its discretion in denying the motion for leave to file a Second Amended Complaint, and the Court should affirm the district court's order.

### C.     The district court did not abuse its discretion in denying Mr. Ingram's two motions for extension of time to file a response to Defendants' motion for summary judgment.

Mr. Ingram filed two motions seeking a six-month extension of time to conduct discovery and respond to Mr. Ingram's motion for summary judgment. *Motion for Extension,* Aplee. Supp. App. Vol. 1 at 97-104; *Second Motion for Extension*, Aplee. Supp. App. Vol. 1 at 105-108. Mr. Ingram argued that his medical conditions reduced his cognitive and physical capacity to prosecute his case. The district court denied these motions. *Order Denying Motions to Extend,* Aplee. Supp. App. Vol. 1 at 110-11. The arguments raised in support of these motions are unavailing, and the district court was correct to deny them.

Pursuant to Fed. R. Civ. P. 6(b)(1), a party may move for an extension of time to file a pleading. D.C.COLO.LCivR 6.1(a) also permits a party to move for an extension of time. The Court may extend a deadline for good cause. *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016). This rule is liberally construed to advance the goal of fully trying each case on the merits. *Id.* The appropriate standard of review for a motion for extension of time is abuse of discretion. *See*, *e.g.*, *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 895-96 & n. 5 (1990); *Ellis v. Univ. of Kansas Medical Cent.,* 163 F.3d 1186 (10th Cir. 1998).

Mr. Ingram argues on appeal that the district court should have granted his motions for extension of time to conduct discovery and to respond to the CDOC Defendants' motion for summary judgment because his medical conditions made it extraordinarily difficult to complete these tasks. *Opening Brief*, at 10-11. The district court rejected this argument on the grounds that Mr. Ingram had filed more than ten handwritten documents totaling over 30 pages in length. The court correctly noted that "[t]he filings of Mr. Ingram demonstrate clearly that he is able to write and to coherently address moderately

33

complex topics." *Order,* Aplee. Supp. App. Vol. 1 at 110. That same observation is clearly evident from Mr. Ingram's Opening Brief, which is 23 handwritten pages long and intelligently and coherently presented. Accordingly, the district court did not abuse its discretion in denying these motions.

Moreover, the district court did not decide either motion to extend until about seven months after they were filed, and it decided the CDOC Defendants' and Defendant McKay's motions for summary judgment the day after that. During this time, Mr. Ingram did not contact the district court about the status of his motions, did not seek to renew the motions, did not conduct any discovery, and did not attempt to submit an out-of-time response to the motion for summary judgment.

For these reasons, the district court did not abuse its discretion in denying Mr. Ingram's motions for extension of time, and this Court should affirm these decisions.

34

**D.    The district court did not err in declining to authorize a report pursuant to *Martinez v. Aaron*.**

Mr. Ingram argues that the district court erred in denying his request for a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). *Opening Brief* at 5, 8. This is incorrect.

A *Martinez* report can be used to develop a record to ascertain whether there are factual or legal bases for an inmate's claims. *Martinez,* 570 F.2d at 318-19. A *Martinez* report "is treated like an affidavit," *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), and such reports "have been used in this circuit almost exclusively to provide the court preliminary information, furnished by prison administration personnel, in pro se cases brought against prison officials." *Ketchum v. Cruz*, 961 F.2d 916, 920 n. 3 (10th Cir. 1992). Although there does not appear to be any binding precedent setting a standard of review for denial of a *Martinez report,* this Court has previously reviewed such a denial for abuse of discretion. *Koehler v. Kirby*, 16 F.3d 416 (Table) (10th Cir. 1994).

35

The district court determined that a *Martinez* report would not have been helpful because the documents Mr. Ingram sought could be obtained by discovery; moreover, Mr. Ingram could not have used those documents to resolve disputes of material fact. *Order Denying Motion for Leave*, ROA, Vol. III, at 110. Mr. Ingram's brief remarks regarding this decision are ultimately nothing more than threadbare disagreements with the district court's order and does not highlight any legal or factual reason why the decision was improper. Accordingly, this Court should not disturb the district court's finding that a *Martinez* report was not necessary in this case.

### E. The district court did not err in dismissing all of Mr. Ingram's claims against non-answering Defendant Tom Clements.

Mr. Ingram asserts the district court erred in preventing him from maintaining claims against former Executive Director Tom Clements. *See Opening Brief*, at 8-9; *Order and Recommendation*, ROA, Vol. III, at 176-81; *Objection*, ROA, Vol. III, 186-92. According to Mr. Ingram, because the procedure for dismissal of deceased parties was not followed, the fact that he failed to serve Mr. Clements' estate is

irrelevant and he should be given the opportunity to proceed with his claims against the estate. *Opening Brief*, at 8-9. This argument is without merit.

Mr. Clements served as the CDOC's Executive Director until his death. It is unclear how it would be feasible for Mr. Ingram to proceed with claims against Mr. Clements in either his official or individual capacity. Mr. Ingram became aware of Mr. Clements' death on November 4, 2014, when the CDOC Defendants executed a Waiver of Service of Summons. *Waiver of Service,* ROA, Vol. I, at 176. To the extent Mr. Ingram maintains an official capacity claim against Mr. Clements, that claim cannot proceed because, upon the death of a public officer who was a party to a civil action, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d).

Mr. Ingram also cannot maintain an individual capacity claim against Mr. Clements. A litigant may move for substitution of a party based upon the death of that party. Fed. R. Civ. P. 25(a)(1). However, if such a motion is not made within 90 days after service of a statement noting the death, the action against the decedent party *must* be

dismissed. This means that Mr. Ingram would have had to have moved for substitution of Mr. Clements with his estate or other representative by no later than February 2, 2015. Mr. Ingram did not file a timely motion for substitution. Accordingly, the district court correctly ruled that Mr. Ingram was barred from maintaining an individual capacity claim against Mr. Clements or his estate or representative. This decision should be affirmed.

## CONCLUSION

The district court properly granted the CDOC Defendants' motion for summary judgment, and this Court should uphold this decision. The other various district court decisions Mr. Ingram appealed should be upheld because the district court did not abuse its discretion when issuing them.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Defendant-Appellees do not believe that oral argument would significantly aid the decisional process. Therefore, pursuant to Fed. R. App. P. 34(a)(1) and 10th Cir. R. 34.1, Defendant-Appellees do not request oral argument in this matter.

Respectfully submitted on this 7th day of January, 2022,

PHILIP J. WEISER
Attorney General

*s/ Gregory R. Bueno*

GREGORY R. BUENO*
Assistant Attorney General
Civil Litigation & Employment Section
Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 BROA,,dway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6644
Fax: 720-508-6032
E-Mail: gregory.bueno@coag.gov
*Counsel of Record
*Attorney for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 7,149 words. I relied on my word processor to obtain the count. This brief is written in Century Schoolbook font, Type Size 14.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

39

Dated: January 7, 2022.

PHILIP J. WEISER
Attorney General

*s/ Gregory R. Bueno*
GREGORY R. BUENO*
Assistant Attorney General

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within Answer Brief

upon all parties herein electronically through the Court's electronic filing

system or by depositing copies of same in the United States mail, first-

class postage prepaid, at Denver, Colorado, on January 7, 2022,

addressed as follows:

(via U.S. Mail)
Michael Ray Ingram, # 43629
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO 80751
*Plaintiff-Appellant (appearing pro se)*

*Courtesy Copy E-mailed To:*
Adrienne Sanchez, CDOC

*s/ Elle DiMuro*
40

# ATTACHMENTS (1 – 7) pursuant to 10th cir.r.28.2(A) and 10th cir.R.30.1(F)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01024–REB–KMT

MICHAEL RAY INGRAM,

      Plaintiff,

v.

FRANK CLEMENTS,
R. WERHOLZ,
R. RAEMISCH,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
JOHN AND JANE DOES, SCF JOB BOARD,
K. MCKAY, SCF Physician's Assistant,

      Defendants.

---

## ORDER

---

    This matter is before the court on Plaintiff's "Motion for Appointment of Counsel" (Doc. No. 127, filed March 28, 2019), Plaintiff's "Supplement to Plaintiff's Motion for Appointment of Counsel" (Doc. No. 132, filed April 10, 2019), and Plaintiff's "Second Supplement to Motion for Appointment of Counsel" (Doc. No. 134, filed May 6, 2019), in which Plaintiff moves the court to require a *Martinez* report. The court has carefully considered the motion, supplements, and related briefing, and has determined that the interests of justice do not warrant appointment of civil counsel or an order requiring Defendants to prepare a *Martinez* report.

**Attachments**                                                      **1**

## LEGAL STANDARDS

### I.      Appointment of Counsel

The determination of whether to appoint counsel in a civil case is left to the sound

discretion of the district court.  *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).  The

court must "give careful consideration to all the circumstances with particular emphasis upon

certain factors that are highly relevant to a request for counsel.  *Id.*  These factors include:

> the merits of the litigant's claims, the nature of the factual issues raised in the
> claims, the litigant's ability to present his claims, and the complexity of the legal
> issues raised by the claims.

*Id.* (internal quotation marks omitted).  "The burden is on the applicant to convince the court that

there is sufficient merit to his claim to warrant the appointment of counsel."  *Hill v. SmithKline*

*Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted) (*quoting McCarthy v.*

*Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985)). "Only in those extreme cases where the lack of

counsel results in fundamental unfairness will the district court's decision be overturned."  *Id.*

(*quoting McCarthy*, 753 F.2d at 839).

Pursuant to D.C.COLO.LAttyR 15(e), the following unrepresented parties are eligible for

the appointment of *pro bono* counsel: (1) a party who has been granted leave to proceed *in forma*

*pauperis* under 28 U.S.C. § 1915; (2) an unrepresented prisoner; and (3) a non-prisoner,

unrepresented party who demonstrates limited financial means.  In addition to eligibility, the

court applies the following factors and considerations in reviewing a motion for appointment of

counsel in a civil action: 1) the nature and complexity of the action; 2) the potential merit of the

*pro se* party's claims; 3) the demonstrated inability of the unrepresented party to retain an

attorney by other means; and 4) the degree to which the interests of justice will be served by

appointment of counsel, including the benefit the court may derive from the assistance of the appointed counsel. D.C.COLO.LAttyR 15(f)(1)(B).

## II.   *Martinez* Reports

When a *pro se* plaintiff is a prisoner, the court may authorize an investigation and report by prison officials (referred to as a *Martinez* report) to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir.1978)). A court is not permitted to use a *Martinez* report to resolve material disputed factual issues by accepting the report's factual findings when they conflict with pleadings or affidavits. *Reed v. Dunham*, 893 F.2d 285, 287 n. 2 (10th Cir.1990); *El'Amin v. Pearce*, 750 F.2d 829, 832 (10th Cir. 1984). A *Martinez* report "is treated like an affidavit," *Hall*, 935 F.2d at 1111, and such reports "have been used in this circuit almost exclusively to provide the court preliminary information, furnished by prison administration personnel, in pro se cases brought against prison officials," *Ketchum v. Cruz*, 961 F.2d 916, 920 n. 3 (10th Cir.1992); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("In this circuit we allow a court authorized report and investigation by prison officials to determine whether a pro se prisoner's allegations have any factual or legal basis.").

### ANALYSIS

## I.   Appointment of Counsel

Plaintiff, who is currently incarcerated, alleges he suffers from numerous medical conditions that have been exacerbated by prison work. (Doc. No. 21.) Plaintiff claims that a contracted physician's assistant, in addition to various prison officials, violated his Eighth

Amendment rights, in addition to the Americans with Disabilities Act and the Rehabilitation Act.[1] (*Id.*)  Plaintiff's claims are not novel or overly complex, and he has relayed the substance of his claims effectively thus far.  In fact, Plaintiff has relayed his claims so effectively that he successfully appealed two of his claims, resulting in the Tenth Circuit reversing and remanding the district court's dismissal of his ADA and Rehabilitation Act claims premised on a lack of access to prescribed medications, in addition to his Eighth Amendment claim alleging deliberate indifference.  (Doc. No. 95.)  In support of his request for appointment of counsel, Plaintiff asks the court for a "series" of attorneys, and notes that his own physical impairments make writing painful and difficult.  (Doc. No. 127 at 1, 2.)  Plaintiff believes counsel would be able to establish that medical staff knowingly departed from acceptable judgment, practice and standards.  (*Id.* at 14.)  However, Plaintiff does not address any attempts he took to obtain an attorney himself, the complexity of the action or the potential merit of his defenses and/or counterclaims.  Additionally, the court does not see any benefit that it may derive from the assistance of appointed counsel.  Plaintiff has not shown that appointment of counsel is appropriate and, on balance, the court does not find appointment of counsel is warranted.

## II.   Request for a *Martinez* Report

In his Motion for Appointment of Counsel, Plaintiff informs the court that he requests a *Martinez* report including "letters, records, and grievance responses that would reveal salient facts that would assist the court in deciding this motion and would ultimately assist in a disposition on the merits."  (Doc. No. 127 at 15.)  During the April 1, 2019 Scheduling/Status

---

[1] These are Plaintiff's remaining claims following the district court's dismissal of Plaintiff's claims and Plaintiff's successful appeal to the Tenth Circuit Court of Appeals.  (Doc. Nos. 69, 95.)

Conference in which Plaintiff participated, the court explained that both parties could request 25

interrogatories, 25 requests for production of documents, 25 requests for admission, and take 2

depositions.  (Doc. No. 129.)  However, in his supplemental brief filed 10 days later, Plaintiff

indicated his desire to have the court order a *Martinez* report, apparently to circumvent discovery

mechanisms.  Plaintiff requested:

> [a] *Martinez* Report that included the many request for medical care, the
> responses, letters to officials, their responses, all grievances, as well as other
> grievances related to my medical conditions and disabilities, federal and state
> statutes and regulations, and DOC policies would create a highly-detailed
> chronological narrative that would expedite and minimize discovery, facilitate
> discovery, encourage settlement, or facilitate disposition on the merits.

(Doc. No. 132 at 2.)  Defendants oppose Plaintiff's request for a *Martinez* report, noting it is

improper for the court to rely on such a report to resolve pertinent factual disputes.  (Doc. No.

133 at 3) (*citing Hall*, 935 F.2d at 1109).

The court declines to require a *Martinez* report.  Plaintiff does not show that a *Martinez*

report would be necessary "to develop a record sufficient to ascertain whether there are any

factual or legal bases for the prisoner's claims."  *See Hall*, 935 F.2d at 1109.  In fact, the

documents Plaintiff wishes to obtain through a *Martinez* report are all discoverable documents

that Plaintiff can obtain through available discovery mechanisms.  Next, because the court is not

permitted to use a *Martinez* report to resolve material disputed factual issues (*see Reed v.*

*Dunham*, 893 F.2d 285, 287 n. 2 (10th Cir.1990)), it benefits both Plaintiff and the court for

Plaintiff to obtain documents through discovery.  More specifically, if Plaintiff were to use

documents obtained through a *Martinez* report as part of a summary judgment motion, the court

could not consider the documents in evaluating factual disputes.  The Federal Rules of Civil

Procedure prescribe discovery mechanisms applicable to all parties in federal civil litigation, and the court will not authorize a means for sidestepping those tools.

Accordingly, the Motion to Appoint Counsel (including Plaintiff's request for a *Martinez* report) is **DENIED**.

Dated May 10, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

**Attachments** **6**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01024–REB–KMT

MICHAEL RAY INGRAM,

    Plaintiff,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
JOHN AND JANE DOES AT COLORADO DEPARTMENT OF CORRECTIONS (DOC)
HEADQUARTERS,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
JOHN AND JANE DOES AT SCF,
K. MCKAY, SCF Physician's Assistant,

    Defendants.

---

# ORDER

---

Before the court is Plaintiff's "Motion to File a Second Amended Complaint."

(["Motion"], Doc. No. 157.)  Defendant McKay has responded in opposition to Plaintiff's

motion (Doc. No. 166), as have Defendants Werholz, Raemisch, Falk, and Chapdelaine.  (Doc.

No. 167.)

    *Pro se* Plaintiff Michael Ray Ingram,[1] an inmate in the custody of the Colorado

Department of Corrections ["CDOC"], brings this civil rights action against Defendants, all of

---

[1] Mindful of Plaintiff's *pro se* status, the court "review[s] his pleadings and other papers liberally
and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v.
United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*,

whom are CDOC employees.  (Doc. No. 21 at 3-5.)  Plaintiff is said to suffer from numerous "medical conditions/disabilities," which have allegedly been exacerbated by issues pertaining to his prison work assignments, his medical care, and his housing.  (*Id.* at 6-17.)  In his First Amended Complaint, Plaintiff asserts violations of: (1) the Eighth Amendment; (2) the Fourteenth Amendment; (3) the Americans with Disabilities Act ["ADA"]; (4) the Rehabilitation Act ["RA"]; and (5) state law.  (*Id.*)  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.* at 19-20.)

After an initial screening under 28 U.S.C. § 1915A, Plaintiff's claims for violations of the Fourteenth Amendment, the ADA, and the RA were dismissed, as legally frivolous.  (Doc. No. 23 at 5-9.)  Plaintiff's remaining Eighth Amendment and state law claims were thereafter dismissed, pursuant to Rules 12(b)(1) and 12(b)(6), on September 23, 2015, and final judgment was then entered in favor of Defendants.  (Doc. Nos. 63, 69, 70.)

On appeal, the Tenth Circuit reversed and remanded the dismissal of Plaintiff's ADA and RA claims, which were premised on a lack of access to prescribed medications, as well as Plaintiff's Eighth Amendment claim against Defendant McKay, specifically, based on his alleged deliberate indifference in approving Plaintiff for prison kitchen work.  (Doc. No. 95 at 9.)  As a result, the following claims remain viable in this case: (1) a § 1983 claim against Defendant McKay for violations of the Eighth Amendment; (2) ADA claims against all Defendants; and (3) RA claims against all Defendants.

---

404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

On August 2, 2019, Plaintiff filed a motion for leave to file a Second Amended

Complaint.  (Mot. 1.)  In the Motion, however, Plaintiff provides no explanation as to the basis

for his request to amend his pleadings.  Further, the proposed Second Amended Complaint,

which accompanies the Motion, does not add any new causes of action, requests for relief,[2] or

parties.  (*See* Doc. No. 157-1 at 22.)  Nor does the proposed pleading augment any of Plaintiff's

remaining claims against Defendants.  Instead, the proposed Second Amended Complaint merely

provides additional, unnecessary details pertaining to Plaintiff's medical history, and deletes

certain allegations regarding Plaintiff's previously dismissed claims for violations of the

Fourteenth Amendment and state law.  (*See id.* at 6-12, 18-19.)

Because the proposed Second Amended Complaint does not set forth any new causes of

action, or make any substantive changes to his remaining claims, the amendment is wholly

unnecessary and futile.  As a result, Plaintiff's motion for leave to amend his complaint is

denied.[3]  *See Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997)

(finding no abuse of discretion in denial of leave to amend where the amendment would be

futile, because there was "no material difference between the two complaints"); *Gibbs-Squires v.*

---

[2] The proposed Second Amended Complaint does request two additional forms of injunctive
relief: (1) "a morning or afternoon job that starts late enough after the morning or afternoon meal
that nausea is not so severe, with full time pay;" and (2) "an Offender Care Aide to move my
property during cell and facility reassignments."  (Doc. No. 157-1 at 22.)

[3] Given that denial of Plaintiff's motion is not dispositive of any claims or parties in this case, an
order is appropriate.  *See Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir.
1988) ("Magistrates may issue orders as to non-dispositive pretrial matters[.]"); *Chavez v.
Hatterman*, No. 06-cv-02525, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) ("Motions to
amend are generally considered non-dispositive because they do not dispose of a claim or
defense of a party, and thus they are subject to the clearly erroneous standard of review."); *see
also* Fed. R. Civ. P. 72(a).

**Attachments**                                                                          **9**

*Urban Settlement Servs.*, 623 F. App'x 917, 923 (10th Cir. 2015) (affirming denial of amendment, based on futility, because "the proposed amendments added no new information to assist the court in its analysis of the existing claims").

Accordingly, it is

**ORDERED** that Plaintiff's "Motion to File a Second Amended Complaint" (Doc. No. 157) is **DENIED**.

This 3rd day of October, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

**Attachments**                    **10**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–01024–REB–KMT

MICHAEL RAY INGRAM,

        Plaintiff,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
JOHN AND JANE DOES AT COLORADO DEPARTMENT OF CORRECTIONS (DOC)
HEADQUARTERS,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
JOHN AND JANE DOES AT SCF,
K. MCKAY, SCF Physician's Assistant,

        Defendants.

---

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Kathleen M. Tafoya**

        This case comes before the court on Defendant Dean Williams' "Motion for

Reconsideration and/or Clarification" (Doc. No. 174, filed October 4, 2019).

        Plaintiff Michael Ingram initially brought this lawsuit in April 2014.  At the time, he

named three then-current or former Executive Directors of CDOC: Tom Clements[1] (deceased

former Executive Director), Roger Werholz (former Interim Executive Director), and Rick

---

[1] Plaintiff originally identified Clements as "Frank," but the subsequent litigation demonstrated
that he intended to proceed against the then-deceased Executive Director of CDOC, Tom
Clements.

Raemisch (then-current Executive Director).  (Doc. No. 1.)  Plaintiff sued all of these former or then-current Executive Directors in both their individual and official capacities.

Tom Clements died in 2013.  This death was reflected in the Waiver of Service submitted by various CDOC Defendants in November 2014.  (Doc. No. 27.)  Due to Tom Clements' death, he was unable to be served.  Ingram did not seek to sue his estate for any claims asserted against him in his individual capacity.  After several years of litigation and an appeal to the Tenth Circuit, at present, the only claims that remain against the various CDOC Defendants, including any and all former or current Executive Directors, are claims under the Americans with Disabilities Act and the Rehabilitation Act.

In January 2019, Dean Williams replaced Defendant Raemisch as Executive Director of CDOC.  At that point, he was automatically substituted in as the operative Defendant for all official capacity claims brought against Clements, Werholtz, and Raemisch in their capacities as Executive Director of CDOC.  *See* Fed. R. Civ. Pro. 25(d).

On July 1, 2019, Ingram filed a motion for an extension to serve Clements.  (Doc. No. 145.)  On July 3, 2019, this Court entered an order indicating that due to the death of Clements, Executive Director Williams would be substituted as a party pursuant to Rule 25(a)(1), which permits substitution of a party upon his or her death.  (Doc. No. 150.)  Defendant Williams' obligation to answer or otherwise respond subsequently was stayed pending the resolution of a motion to amend the operative complaint.  (Doc. No. 171.)  Plaintiff's motion to amend was denied on October 3, 2019.  (Doc. No. 173.)

In the present motion, Defendant Williams agrees that he has been substituted for Defendant Clements insofar as he is being sued in his official capacity as Executive Director of

**Attachments**                                    **12**

CDOC.  However, Defendant Williams seeks reconsideration and clarification as to whether this court's order substituted Defendant Williams for Defendant Clements with respect to any individual capacity claims asserted against Defendant Clements.

The court agrees that Defendant Williams is not a successor in interest to claims made against Defendant Clements in his individual capacity.  *See, e.g., Havens v. Clements*, No. 13-CV-00452-MSK-MEH, 2014 WL 1213804, at *1 n.1 (D. Colo. Mar. 24, 2014) ("Defendant Rick Raemisch, in his official capacity as Executive Director of the Colorado Department of Corrections, has been automatically substituted as a party to this action for the late Mr. Clements, in his official capacity.  With regard to claims against Mr. Clements in his individual capacity, Mr. Havens would have to pursue his action against Mr. Clements' estate."); *Esquibel v. Raemisch*, No. 15-CV-00408-REB-KLM, 2015 WL 10520622, at *1 n.2 (D. Colo. Sept. 17, 2015), *report and recommendation adopted*, No. 15-CV-00408-REB-KLM, 2016 WL 1059446 (D. Colo. Mar. 17, 2016) ("Thus, although Tom Clements is deceased, Rick Raemisch in his official capacity is automatically substituted for Tom Clements in his official capacity pursuant to Rule 25(d).  With regard to claims against Mr. Clements in his individual capacity, those claims must be brought against Mr. Clements' estate."); *Perrian v. Coons*, No. 13-CV-02951-KLM, 2015 WL 1539022, at *6 n. 5 (D. Colo. Mar. 31, 2015) ("With regard to claims against Mr. Clements in his individual capacity, Plaintiff would have to pursue his action against Mr. Clements' estate."); *see also Griffin v. Hickenlooper*, 549 Fed. App'x 823, 824 n.** (10th Cir. 2013) ("Our substitution of Mr. Raemisch for Mr. Clements under Fed. R. App. P. 43(c)(2) affects only the official-capacity allegations.").

**Attachments**                                                    **13**

Moreover, Plaintiff was made aware of Defendant Clements' death on November 4, 2014, when the various CDOC Defendants submitted a Waiver of Service.  (Doc. No. 27.)  Pursuant to Rule 25(a)(1), "a motion for substitution may be made by any party or by the decedent's successor or representative.  *If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.*"  Fed. R. Civ. Pro. 25(a)(1) (emphasis added).  Therefore, if any party was going to be substituted for Defendant Clements for the claims against him in his individual capacity, that substitution would have had to occur by February 2, 2015, ninety days after notice of Defendant Clements's death was announced in the Waiver of Service.  Because no motion for substitution was filed, the claims against Defendant Clements in his individual capacity should be dismissed.

Finally, Defendants seek clarification about whether this court expects Defendant Williams to answer or otherwise respond to Plaintiff's First Amended Complaint.  Rule 25(d) provides that substitution of a public official for claims against him or her in his or her official capacity is automatic once the former official leaves office and his or her successor assumes that office.  *See* Fed. R. Civ. Pro. 25(d).  Various CDOC Defendants filed an answer on March 8, 2019.  (Doc. No. 120.)  This includes Defendant Raemisch, who answered the claims pending against him in both his official and individual capacities.  Because at that point Executive Williams had assumed his position with CDOC, the use of Defendant Raemisch's name was a misnomer and should be disregarded.  *See* Fed. R. Civ. P. 25(d) ("Later proceedings [after automatic substitution] should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").  Accordingly, the answer of the Executive Director of CDOC to the claims asserted against him in his official capacity are attributed to

4

**Attachments**                                                                    **14**

Defendant Williams, who held the office at the time.  Accordingly, Defendant Williams need not file an additional answer or responsive pleading.

WHEREFORE, for the foregoing reasons, it is

ORDERED that the "Motion for Reconsideration and/or Clarification" (Doc. No. 174) is GRANTED.  This court respectfully

RECOMMENDS that the claims against Defendant Clements in his individual capacity be DISMISSED pursuant to Fed. R. Civ. P. 25(a)(1).

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

    Dated this 7th day of October, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

**Attachments**                                                                 **16**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01024–REB–KMT

MICHAEL RAY INGRAM,

     Plaintiff,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
JOHN AND JANE DOES AT COLORADO DEPARTMENT OF CORRECTIONS (DOC)
HEADQUARTERS,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
JOHN AND JANE DOES AT SCF,
K. MCKAY, SCF Physician's Assistant,

     Defendants.

---

## ORDER

---

    Before the court is Plaintiff's "Motion for Appointment of Counsel." (["Motion"], Doc.

No. 200.) No response has been filed to the Motion. After carefully considering the Motion and

related briefing, the court has determined that the interests of justice do not warrant the

appointment of civil counsel.

    The determination as to whether to appoint counsel in a civil case is left to the sound

discretion of the district court. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). The

court must "give careful consideration to all the circumstances with particular emphasis upon

certain factors that are highly relevant to a request for counsel." *Id.* (quoting *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985)).  Those factors include: "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Id.* (quoting *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (quoting *McCarthy*, 753 F.2d at 838).  "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.* (quoting *McCarthy*, 753 F.2d at 839).

Pursuant to the Local Rules of Practice of the United States District Court for the District of Colorado-Attorney, the following unrepresented parties are eligible for the appointment of *pro bono* counsel: (1) a party who has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915; (2) an unrepresented prisoner; and (3) a non-prisoner, unrepresented party who demonstrates limited financial means.  D.C.COLO.LAttyR 15(e).  In addition to eligibility, the court applies the following factors and considerations to evaluate a motion for the appointment of counsel in a civil case: (1) the nature and complexity of the action; (2) the potential merit of the *pro se* party's claims; (3) the demonstrated inability of the unrepresented party to retain an attorney by other means; and (4) the degree to which the interests of justice will be served by the appointment of counsel, including the benefit the court may derive from the assistance of the appointed counsel.  D.C.COLO.LAttyR 15(f)(1)(B).

**Attachments**                                                                                             **18**

*Pro se* Plaintiff Michael Ray Ingram,[1] an inmate in the custody of the Colorado Department of Corrections ["CDOC"], brings this civil rights action against Defendants, all of whom are CDOC employees.  (Doc. No. 21 at 3-5.)  Plaintiff is said to suffer from numerous "medical conditions/disabilities," which have allegedly been exacerbated by issues pertaining to his prison work assignments, his medical care, and his housing.  (*Id.* at 6-17.)  In his First Amended Complaint, Plaintiff asserts violations of: (1) the Eighth Amendment; (2) the Fourteenth Amendment; (3) the Americans with Disabilities Act ["ADA"]; (4) the Rehabilitation Act ["RA"]; and (5) state law.  (*Id.*)  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.* at 19-20.)

After an initial screening under 28 U.S.C. § 1915A, Plaintiff's claims for violations of the Fourteenth Amendment, the ADA, and the RA were dismissed, as legally frivolous.  (Doc. No. 23 at 5-9.)  Plaintiff's remaining Eighth Amendment and state law claims were thereafter dismissed, pursuant to Rules 12(b)(1) and 12(b)(6), on September 23, 2015, and final judgment was then entered in favor of Defendants.  (Doc. Nos. 63, 69, 70.)

On appeal, the Tenth Circuit reversed and remanded the dismissal of Plaintiff's ADA and RA claims, which were premised on a lack of access to prescribed medications, as well as Plaintiff's Eighth Amendment claim against Defendant McKay, specifically, based on his alleged deliberate indifference in approving Plaintiff for prison kitchen work.   (Doc. No. 95 at

---

[1] Mindful of Plaintiff's *pro se* status, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

**Attachments**                                                    **19**

9.)  As a result, the following claims remain viable in this case: (1) a § 1983 claim against

Defendant McKay for violations of the Eighth Amendment; (2) ADA claims against all

Defendants; and (3) RA claims against all Defendants.  The claims are neither novel, nor

complex, and as evidenced by his successful appeal, Plaintiff has relayed the substance of his

claims effectively thus far.

    In support of his request for the appointment of counsel, Plaintiff states that certain of his

requested relief "will never be acquired without the assistance of counsel."  (Mot. 2.)  Plaintiff

claims that, since he last requested appointed counsel,[2] his "physical/cognitive impairments"

have become "so much greater."  (*Id.*)  According to Plaintiff, "everything is even more

difficult," including "thinking things through," "document preparation," and "sorting through

papers."  (*Id.* at 2-4.)  He complains that he suffers from "confusion/forgetfulness," "decreased

concentration/clear-thinking," debilitating "nerve pain," and "hand wounds."  (*Id.* at 2-5.)

Plaintiff contends that "it is just not possible to make anything but an inadequate, beleaguered

attempt at prosecuting this case[.]"  (*Id.* at 2-3.)  However, he does not address the nature and

complexity of the action, the potential merit of his claims, or any efforts he has undertaken to

retain an attorney by other means.  *See* D.C.COLO.LAttyR 15(f)(1)(B).  In addition, the court

does not see any benefit that it may derive from the assistance of appointed counsel.  On balance,

therefore, the court does not find the appointment of counsel to be warranted.

    Accordingly, it is

---

[2] Plaintiff previously filed a motion to appoint counsel on March 28, 2019.  (Doc. No. 127.)
That motion was denied on May 10, 2019.  (Doc. No. 136.)

**Attachments**                                                                                    **20**

**ORDERED** that Plaintiff's "Motion for Appointment of Counsel" (Doc. No. 200) is

**DENIED**.

Dated this 14th day of April, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14–cv–01024–REB–KMT

MICHAEL RAY INGRAM,

      Plaintiff,

v.

R. WERHOLZ, et al.,

      Defendants.

---

**MINUTE ORDER**[1]

---

      This matter is before me on the following: (1) the **Plaintiff's Motion for Extension of Time** [#215][2] filed August 13, 2020; and (2) the **Plaintiff's Motion for Extension of Time To Respond to Defendant McKay's Motion for Summary Judgment** [#217] filed September 17, 2020.  I deny both motions.

      In the first motion [#215], the plaintiff seeks six additional months to do research, draft discovery requests, draft a summary judgment motion, etc. In the second motion [#217], Mr. Ingram seeks an extension of time to respond to the motion for summary judgment [#195] of defendant McKay.  Mr. Ingram says he did not receive a copy of Ms. McKay's motion for summary judgment.  After [#217] was filed, counsel for Ms. McKay ensured that Mr. Ingram received a copy of Ms. McKay's motion for summary judgment [#195].  *Response* [#218].

      Repeatedly, the plaintiff, Michael Ingram, has sought extensions of time to file various responses and/or objections in this case and in a separate case, 19-cv-02924.  Until September of 2020, most or all of his requests were granted.  Mr. Ingram, an inmate in the Colorado Department of Corrections, contends his medical condition makes it difficult for him to prepare responses and objections.  In addition, he says prison restrictions related to the COVID-19 pandemic limit his ability to prepare responses and objections.

      Since January of 2020, Mr. Ingram has filed with the court ten or more documents totaling over 30 hand-written pages.  In some of those documents, he describes in detail his medical conditions and the restrictions he faces in prison due to the pandemic. The filings of Mr. Ingram demonstrate clearly that he is able to write and to coherently address moderately complex topics. With a similar effort, Mr. Ingram could have prepared the items he addresses in [#215].  He could have prepared a response to the motion for summary judgment of Ms. McKay but he has not.  That motion [#195] was delivered to Mr. Ingram in early October, 2020.  Nearly

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2]  "[#215]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

**Attachments**        **22**

six months later, he has not filed a response.  Even considering the circumstances of Mr. Ingram, in his present motions [#215 & #217], Mr. Ingram has not shown good cause for additional extensions of time.

After reviewing the motions and the case, it is

**ORDERED** as follows:

1.  That the **Plaintiff's Motion for Extension of Time** [#215] is denied; and

2.  That the **Plaintiff's Motion for Extension of Time To Respond to Defendant McKay's Motion for Summary Judgment** [#217] is denied.

Dated: March 29, 2021.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 14-cv-01024-REB-KMT

MICHAEL RAY INGRAM,

      Plaintiff,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
K. MCKAY, SCF Physician's Assistant,

      Defendants.

---

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter is before me on the following: (1) **Defendant Keri McKay's Motion for Summary Judgment** [#195][1] filed March 26, 2020; and (2) the **State Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a)** [#214] filed August 10, 2020. The plaintiff has had many months to file responses to the two motions, but he has not. I grant both motions and direct entry of judgment in favor of the defendants.

### I. JURISDICTION

      I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

      The purpose of a summary judgment motion is to assess whether trial is necessary. ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] "[#195]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

judgment as a matter of law.[2]  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Id* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  BACKGROUND

The plaintiff, Michael Ingram, is an inmate in the Colorado Department of Corrections. In his first amended complaint [#21], he alleges that the defendants violated his Eighth

---

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* FED. R. CIV. P. 56(a). *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that any hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

Amendment right to be free from cruel and unusual punishment.  In addition, he asserted claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Defendants Williams, Werholz, Raemisch, Falk, Chapdelaine, and McKay filed motions to dismiss [#45 & #56].  The court entered an order [#69] granting the motions to dismiss and entering judgment in favor of the defendants.

Mr. Ingram filed an appeal.  Ultimately, the United States Court of Appeals for the Tenth Circuit entered an order [#95] reversing, in part, the order [#69] granting the motions to dismiss.  The Tenth Circuit reinstated certain claims in the first amended complaint against certain defendants.  Specifically, the Tenth Circuit reinstated the ADA and Rehabilitation Act claims against defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams.  In addition, the Tenth Circuit reinstated the Eighth Amendment claim against defendant McKay.  The subject matter which the Tenth Circuit determined gives rise to the ADA and Rehabilitation Act claims is limited to Ingram's allegations about his access to medication. The Tenth Circuit made clear that the Eighth Amendment claim, which pertains to his assignment to work in the prison kitchen, was raised only against Defendant McKay.  Otherwise, the Tenth Circuit affirmed the order [#69] granting the motions to dismiss.[3]

In their motion for summary judgment [#195], defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams seek summary judgment on the ADA and Rehabilitation Act claims against them.  I will refer to this group of defendants as the state defendants.  In her motion for summary judgment, defendant McKay seeks summary judgment on the Eighth Amendment claim against her.  These are the remaining claims and defendants in this case.

---

[3]  Following the remand by the Tenth Circuit, Ingram substituted his official capacity claim against defendant Clements, the former CDOC Executive Director, with an official capacity claim against the current Executive Director, Dean Williams. [Docs. #145, 150, 152]. For this reason, Williams  joins defendants Raemisch, Werholz, Falk, and Chapdelaine in the motion [#214] fo summary judgment.

## IV.  UNDISPUTED FACTS

### A.  ADA & Rehabilitation Act Claim - State Defendants

At all times relevant to this case, the plaintiff, Michael Ingram, was incarcerated at the Sterling Correctional Facility (SCF), a part of the Colorado Department of Corrections (CDOC).  Defendant Raemisch was employed as the CDOC's Executive Director from July 22, 2013 until his retirement from the position on January 8, 2019.  Defendant Werholz was employed by the CDOC as its Interim Executive Director from April 22, 2013 until his retirement from the CDOC on July 31, 2013.  Defendant Falk was employed as Warden and Deputy Director of Prisons with the CDOC from December 15, 1995 until his retirement on January 31,2019.  Defendant Chapdelaine was employed as Warden with the CDOC from July 1, 2001 until his retirement on October 31, 2016.  Defendant Williams is the current Executive Director of the CDOC.

Ingram had a medical visit with Dr. Goldsmith on December 17, 2008.  Ingram told Dr. Goldsmith that he (Ingram) had been experiencing a burning sensation in his feet which made it difficult for him to stand for a long period of time. Dr.  Goldsmith issued Ingram a medical work restriction which prohibited Ingram from standing for more than 30 minutes. Dr. Goldsmith also ordered x-rays of Ingram's lower back and hips. *Motion* [#214],Exhibit E [#214-5].  Ingram identified a choking cough, neck pain, back spasms, foot pain, knee pain, lower back pain, left hip pain, and a sense of constriction in his chest as his physical ailments. *Id.*

Exhibit F [#214-6] to the state defendants motion for summary judgment [#214] contains excerpts from the deposition of Ingram, which was taken on January 29, 2020.  The state defendants rely on Ingram's sworn testimony in support of their motion.

When Ingram was asked to describe the actions defendant Raemisch took which violated Title II of the ADA and the Rehabilitation Act (or conduct which he contends is

otherwise unlawful), Ingram testified only that he holds defendant Raemisch "responsible for continuing the way the system functions." *Exhibit F* [#214-6], 49:1-21. When Ingram was asked to describe what actions defendant Werholz took which he believes violated Title II of the ADA and the Rehabilitation Act, Ingram testified that he named Werholz "because he became the executive director and, as a result, he would then be responsible as far as the injunctive… relief." *Exhibit F* [#214-6], 48:1-13. Ingram also testified that he named Werholz as a defendant only because he felt he was responsible for the "system" working improperly. *Id.,* 49:9-16.

Ingram also testified about the "warden" at SCF. While he does not identify the Warden by name, it appears he was referring to Defendant Falk. Ingram testified that he wrote a letter to Falk informing him about how it was improper to assign him to the kitchen. *Exhibit F* [#214-6], 27:19-28:2. This testimony applies to the Eighth Amendment claim which the Tenth Circuit held is applicable only to Defendant McKay, not Defendant Falk or any of the state defendants. Ingram's deposition does not contain any claims about defendant Falk's wrongdoing as it pertains to Ingram being required to wait in line for medication.

When Ingram was asked to describe what acts or omissions defendant Chapdelaine took that he believed violated Title II of the ADA and the Rehabilitation Act, he testified that Chapdelaine, who was the Associate Warden, had informed him that he (Ingram) had filed 21 frivolous grievances. *Exhibit F* [#214-6], 49:22-25; 51:3-17. He could not ascribe any additional purported misconduct to Chapdelaine. When Ingram was asked if he sent letters or grievances to any Wardens or Executive Directors specifically regarding his complaints about standing in med line, he testified only that he "thinks" he "probably" did so. *Exhibit F* [#214-6], 75:1-8.

Ingram has brought ADA and Rehabilitation Act claims against defendant Williams in his official capacity and as a successor in interest to Rick Raemisch and/or Tom

**Attachments**                                                                 **28**

Clements, who served as Executive Director of the CDOC during the time the facts underlying the claims in Ingram's First Amended Complaint allegedly took place. Ingram complains about having to stand in med line to wait for his medications for 20 to 35 minutes, and asserts that doing so causes him physical discomfort.  However, Ingram did not testify that CDOC staff are denying him his medication or that he is incapable of standing in line. *Exhibit F* [#214-6], pp. 64-68.

### B.  Eighth Amendment - Defendant Keri McKay

At all times relevant to this case, defendant McKay was a Physician's Assistant working on a contract basis with the CDOC and assigned to work at the Sterling Correctional Facility. On December 17, 2008, Ingram was seen by Dr. Goldsmith.  Ingram told the doctor that he had burning in his feet that was very annoying and made it difficult for him to stand for long periods of time. Dr. Goldsmith issued Ingram a medical work restriction which prohibited prolonged standing beyond 30 minutes and ordered x-rays of Ingram's lower back and hips. *Motion* [#195], Exhibit A [#195-1].  The x-rays ordered by Dr. Goldsmith showed a normal pelvis and mild degenerative arthritic changes to both of Mr. Ingram's hips. *Exhibit B* [#195-2].

Ingram was seen by Medical Provider Kathleen Melloh on May 26, 2010.  Mr. Ingram asked to be scheduled to have his feet evaluated. He told Melloh that Dr. Goldsmith had given him a work restriction for no prolonged standing, and he would like to get that back because he was working in the library. He was currently doing plantar fasciitis exercises which helped. Melloh noted in Ingram's medical record that she instructed Ingram to keep doing the exercises and she would schedule a follow up appointment to discuss his plantar fasciitis. *Exhibit C* [#195-3].

On June 24, 2010, Mr. Ingram met with medical provider Melloh to discuss the evaluation of his feet.  There were no erythema, edema, or ecchymosis on Ingram's feet. He was able to hold himself up on his toes without problem. His posterior heels were neutral, and

his arches presented without pronation of his feet. Melloh ordered Ingram to stop taking

Naprosyn for pain for three days, then they would administer injections of Depo-Medrol in his

heels for the pain. *Exhibit D* [#195-4]. Ingram received the Depo-Medrol injections on June 30,

2010.  *Exhibit E* [#195-5].

On July 23, 2010, Ingram had his follow up appointment with Melloh. At that time,

Ingram told Melloh that he did get some relief from the injections, which he rated at 30%

improvement. However, Melloh reminded Ingram that she had seen him in the prison yard

earlier in the week, and he had told her that his feet felt very good and he was happy with the

injections. Ingram also told Melloh that he could walk around much better. *Exhibit G* [#196-1].

On March 23, 2012, Ingram submitted Offender Request for Accommodation

forms, asserting a claim of disability for ankle pain, knee pain, lower lumbar pain and spasms,

hip arthritis, arthritic neck pain, and pain from plantar fasciitis, among many other listed

injuries.  *Exhibit H* [#196-2].  Ingram worked in the dish room of the SCF kitchen from April 6,

2012 through May 7, 2012.  *Amended complaint* [#21], CM/ECF p. 8, ¶ 18 (includes

declaration under penalty of perjury).  Ingram was given his first ADA Mobility Evaluation on

April 24, 2012.  *Exhibit I* [#196-3].

On May 2, 2012, defendant McKay saw Ingram when he went to the SCF medical unit

for multiple issues. His biggest issue was concerning his chronic cough, but he also

complained of foot pain due to plantar fasciitis. He told McKay that working in the kitchen was

causing him to stand for several hours a day and his feet were killing him. He also told McKay

that his hip was bothering him as well, especially with the standing, twisting, and lifting that he

had to do in the kitchen. McKay told Ingram that when his pain was acting up, he needed to

take his Naprosyn, and that she would email his Case Manager, Lt. Scott Sturgeon, about

relocating him from working in the kitchen for health reasons, and not wanting him to cough

over the food or dishes being used by others. *Exhibit J* [#196-4].  McKay also requested a

7

medical staffing to review Ingram's medical issues and job placement on May 2, 2012. *Exhibit K* [#196-5].

According to Ingram's CDOC Inmate Chronological Records, on May 2, 2012,  his Case Manager, Lt. Scott Sturgeon, spoke with him about his medical issues and his assignment in the kitchen.  *Exhibit L* [#196-6].  Ingram was removed from his kitchen job on May 7, 2012, because of McKay's email to Lt. Sturgeon.  *Amended complaint* [#21], CM/ECF p. 8, ¶ 18 (includes declaration under penalty of perjury).

Ingram was given his second ADA Mobility Evaluation on May 8, 2012.  *Exhibit N* [#197-2].  On May 22, 2012, Ingram's ADA Mobility Disability Evaluation was completed.  The CDOC determined that Ingram did not meet the criteria for permanent disability. *Exhibit O* [#197-3].

Ingram was re-assigned to the SCF kitchen on June 14, 2012, and worked in the diet kitchen.  *Amended complaint* [#21], CM/ECF p. 8, ¶ 21 (includes declaration under penalty of perjury).  The medical staffing requested by McKay to address Ingram's medical issues and job placement was held on June 19, 2012.  RN Ryder May, and RN Jamie Vanmeter were present during the staffing along with McKay and Ingram. With regard to Ingram's request for work restrictions, it was confirmed to Ingram that he did have a restriction for no prolonged standing for more than 30 minutes without a break, and he was told to contact his case manager if his work supervisors were making him go against his restriction. The medical staff also confirmed Ingram's understanding that if he could rest for a few minutes and then return to work, that this would be meeting his restriction requirements. Nurse Ryder also agreed to contact the kitchen to discuss his issues with the prolonged standing for more than 30 minutes. *Exhibit P* [#197-4].

From July 21, 2012, until the end of November 2017, Ingram periodically worked in the SCF kitchen and was assigned to various jobs.  In November 2017, he was re-assigned to

work in the library.  No one from SCF medical specifically assigned Mr. Ingram to work in specific kitchen positions.  Ingram's work assignments were something that was determined by the security and CDOC personnel who worked in the kitchen. *Exhibit M* [#197-1] (Ingram deposition) 101:24 – 102:16.

Another medical staffing was held on October 30, 2012. Present were Dr. Fauvel, Ms. McKay, ADA Coordinator B. Scott, Case Manger Josh Dorsey, and Nurses Ryder, May, D. Tramp, L. Holter and N. Wilson. Mr. Ingram was given a release of records to sign, releasing SCF medical to speak about his medical conditions to the ADA Coordinator and his Case Manager. Mr. Ingram refused to sign the release and stated that if anyone had anything to say that it had to be in writing.  It was explained to Mr. Ingram that this staffing was his opportunity to discuss his requests with his medical providers as well as the ADA Coordinator, but Mr. Ingram again stated that he didn't wish to discuss anything with the group and requested to leave.  *Exhibit R* [#197-6].

## V.  ANALYSIS

### A.  ADA & Rehabilitation Act Claim - State Defendants

 To establish a failure to accommodate claim under the ADA, a plaintiff must show:

(1) that he or she is a qualified individual with a disability;

(2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability; and

(4) that the defendant knew he or she was disabled and required an accommodation.

***J.V. v. Albuquerque Public Schools***, 813 F.3d 1289, 1295, 1299 (10th Cir. 2016).

To demonstrate he is entitled to protection under Section 504 of the Rehabilitation Act, a plaintiff must show that "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise

**Attachments**          **32**

qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." **Hollonbeck v. U.S. Olympic Comm**., 513 F.3d 1191, 1194 (10th Cir. 2008). Because the required showings under the ADA and the Rehabilitation Act are substantially similar, the same analysis can be generally applied to both. **Cohon ex rel. Bass v. New Mexico Dep't of Health**, 646 F.3d 717, 726 (10th Cir. 2011).

"To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." **Berry v. T-Mobile USA, Inc.**, 490 F.3d 1211, 1216 (10th Cir. 2007).

To the extent Ingram asserts a failure to accommodate claim against defendant Williams in his official capacity, this claim is, effectively, a claim against the CDOC.  A plaintiff may assert such a claim and seek prospective relief.  **Bruggeman v. Blagojevich**, 324 F.3d 906, 912-13 (7th Cir. 2003).  Assuming without deciding that Ingram has established that he has one or more qualifying disabilities, his official capacity claim fails.

The undisputed facts in the record do not support a finding that Ingram has been denied any service or program as a result of one of his disabilities.  As to this claim, Ingram says he often is required to stand in the med line and wait for his medications for 20 to 35 minutes.  He says standing for that long causes him discomfort.  However, he has not shown that being required to stand in the med line results in a denial of his medication or that his access to medication is unduly delayed.  He does not contend he is physically incapable of standing in the med line.  The undisputed facts in the record do not support a finding that the CDOC has delayed or denied Ingram's access to his medicine by reason of a disability.  Defendant Williams is entitled to summary judgment on the official capacity ADA and Rehabilitation Act claim.

**Attachments**                                                                 **33**

To the extent Ingram asserts a Title II ADA and Rehabilitation Act claim against defendants, Werholz, Raemisch, Falk, and Chapdelaine, in their official capacities, these defendants are entitled to summary judgment.  Only prospective injunctive relief is available on such a claim.  ***Bruggeman v. Blagojevich***, 324 F.3d 906, 912-13 (7th Cir. 2003).  Werholz, Raemisch, Falk, and Chapdelaine no longer work for the CDOC.  So, even if Ingram established and ADA or Rehabilitation Act claim, the court could not compel these defendants to implement changes which would provide relief to Ingram.  Thus, defendants, Werholz, Raemisch, Falk, and Chapdelaine, are entitled to summary judgment on any ADA or Rehabilitation Act claim asserted against them in their official capacities.

To the extent Ingram asserts a Title II ADA and Rehabilitation Act claim against any defendant in his or her individual capacities, those claims are unfounded as a matter of law. "[I]ndividual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the Disability Act." ***Montez v. Romer***, 32 F.Supp.2d 1235, 1241 (D. Colo. 1999).  Accordingly, defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams, are entitled to summary judgment on the Title II ADA and Rehabilitation Act claims asserted against them in their individual capacities.

### B.  Eighth Amendment - Defendant McKay

Deliberate indifference to serious medical needs can be a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." ***Helling v. McKinney***, 509 U.S. 25, 32 (1993) (quotation omitted). To state a claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976).

"The test for constitutional liability of prison officials [under the Eighth Amendment] involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citation omitted). First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.' " *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (holding that even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need for medical treatment was not obvious) (internal quotations and citation omitted). Furthermore, a delay in medical care "only constitutes an Eighth Amendment violation when the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir.2001) (quotations and citation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (internal quotation and citation omitted).

Ingram has not established an Eighth Amendment violation by McKay.  Ingram claims McKay was deliberately indifferent to the dangers posed by approving Ingram for kitchen work which required prolonged standing and heavy lifting.  The undisputed facts in the record do not support a finding that McKay exhibited deliberate indifference to Ingram's serious medical needs.  As detailed above, McKay frequently provided or coordinated provision of effective

**Attachments**                                                   **35**

treatments to Ingram.  In addition, McKay provided or coordinated provision of medical orders limiting standing by Mr. Ingram to 30 minutes.  The record reflects McKay's efforts to help Mr. Ingram manage his pain, as well as McKay's subjective belief that Mr. Ingram could continue to work in the SCF kitchen with a restriction in place limiting standing. McKay never had the power to control what job assignment Ingram received.  The undisputed facts in the record show McKay did not engage in extraordinary neglect of Ingram's medical condition or his need for medical care.  Rather, the undisputed facts in the record show McKay properly and repeatedly exercised her considered medical judgment as to Mr. Ingram.  That is the opposite of deliberate indifference.  Defendant McKay is entitled to summary judgment on the Eighth Amendment claim.

### VI.  CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to the plainitff, defendants, Werholz, Raemisch, Falk, Chapdelaine, and Williams, are entitled to summary judgment on the ADA and Rehabilitation Act claims.  Defendant McKay is entitled to summary judgment on the Eighth Amendment claim.  These claims are the only claims pending in this case.  I grant the motions for summary judgment [#195 & 214] and direct the entry of final judgment in this case.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant Keri McKay's Motion for Summary Judgment** [#195] is granted;

2. That the **State Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a)** [#214] is granted;

3. That based on this order, the **Order Adopting Recommendation of United States Magistrate Judge** [#69], and the **Order To Dismiss in Part and To Draw in Part** [#23], judgment shall enter in favor of the defendants, Dean Williams, R. Werholz, R. Raemisch, John and Jane Does at the Colorado Department of Corrections, J. Falk, Sterling Correctional

13

Facility (SCF) Warden, J. Chapdelaine, SCF Associate Warden, John and Jane Does at SCF, John and Jane Does, SCF Job Board, K. Mckay, SCF Physician's Assistant, Physicians Health Partners, Inc., dba Correctional Health Partners, a Colorado Corporation, and John and Jane Does, Physicians Health Partners, Inc., dba Health Partners, a Colorado Corporation, and against the plaintiff, Michael Ray Ingram;

4.  That under 28 U.S.C. § 1915(e)(B)(2)(I), the claims for violation of equal protection (claim two), ADA (claim three), and Rehabilitation Act (claim four) are dismissed as legally frivolous based on the order at [#23];

5.  That under Fed. R. Civ. P. 56, the ADA and Rehabilitation Act claims against defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams are dismissed based on this order;

6.  That under Fed. R. Civ. P. 56, the Eighth Amendment claim against defendant McKay is dismissed based on this order;

7.  That under Fed. R. Civ. P. 12(b)(6), all other claims are dismissed based on the order at [#69];

8. That the defendants are awarded their costs to be taxed by the clerk in the time and manner required under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

9. That this case is closed.

Dated March 30, 2021, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*

Robert E. Blackburn
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-1024-REB-KMT

MICHAEL RAY INGRAHAM,

      Plaintiff,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
K. MCKAY, SCF Physician's Assistant,

      Defendants.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Judgment is hereby entered.

Pursuant to the Order Granting Motions for Summary Judgment [ECF 222] entered by Judge Robert E. Blackburn on March 30, 2021, it is

ORDERED that judgment is entered in favor of the defendants, Dean Williams, R. Werholz, R. Raemisch, John and Jane Does at the Colorado Department of Corrections, J. Falk, Sterling Correctional Facility (SCF) Warden, J. Chapdelaine, SCF Associate Warden, John and Jane Does at SCF, John and Jane Does, SCF Job Board, K. Mckay, SCF Physician's Assistant, Physicians Health Partners, Inc., dba Correctional Health Partners, a Colorado Corporation, and John and Jane Does, Physicians Health Partners, Inc., dba Health Partners, a Colorado Corporation, and against the plaintiff, Michael Ray Ingram. It is

FURTHER ORDERED that under 28 U.S.C. § 1915(e)(B)(2)(I), the claims for violation of equal protection(claim two), ADA (claim three), and Rehabilitation Act (claim four) are dismissed as legally frivolous based on the Order to Dismiss in Part and to Draw in Part [ECF 23]. It is

FURTHER ORDERED that under Fed. R. Civ. P. 56, the ADA and Rehabilitation Act claims against defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams are dismissed based on the Order Granting Motions for Summary Judgment [ECF 222]. It is

FURTHER ORDERED that under Fed. R. Civ. P. 56, the Eighth Amendment claim against defendant McKay is dismissed based on the Order Granting Motions for Summary Judgment [ECF 222]. It is

FURTHER ORDERED that under Fed. R. Civ. P. 12(b)(6), all other claims are dismissed based on the Order Adopting Recommendation of United States Magistrate Judge [ECF 69]. It is

FURTHER ORDERED that defendants are awarded their costs, to be taxed by the clerk of the court in the time and manner specified in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

This case will be closed.

DATED March 30, 2021, at Denver, Colorado.

FOR THE COURT:

Jeffrey P. Colwell, Clerk

By:    s/L.Roberson
         L. Roberson
         Deputy Clerk